Robert J. PATERS, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 97–2655.

United States Court of Appeals,
Seventh Circuit.

Argued March 3, 1998.

Decided Oct. 28, 1998.

Cheryl J. Sturn (argued), Westtown, PA, for Petitioner–Appellant.

Christian E. Larsen (argued), Thomas P. Schneider, Office of the United States Attor-

ney, Milwaukee, WI, for Respondent–Appellee.

Before ESCHBACH, COFFEY, and ROVNER, Circuit Judges.

ESCHBACH, Circuit Judge.

Robert Paters was convicted by a jury of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a) and 846, and was sentenced to 121 months' imprisonment. We affirmed Paters' conviction and sentence. *United States v. Paters*, 16 F.3d 188 (7th Cir.1994). He now seeks vacation of his conviction, under 28 U.S.C. § 2255, on the ground that he received ineffective assistance from his attorney during the plea negotiation process. The district court found as a matter of law that Paters could not establish prejudice and denied Paters' motion. Since the district court applied an erroneous standard for determining prejudice, we vacate the judgment of the district court and remand the case for further proceedings.

## I. HISTORY

In December 1991, Paters was charged with conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a) and 846. He hired defense counsel to represent him. A jury found Paters guilty as charged, and the district court sentenced him to 121 months' imprisonment.

On May 13, 1996,[1] Paters filed this § 2255 motion, asserting that his sentence should be vacated because defense counsel rendered ineffective assistance during the plea negotiation process. Paters asserted that defense counsel told him that he could be held responsible only for the two kilograms of cocaine with which he was caught. Defense counsel also allegedly told Paters that the result would be the same whether he pleaded guilty or went to trial, and therefore Paters had "nothing to lose" by going to trial. Finally, Paters claimed that three days before the trial was scheduled to begin, defense counsel informed him that the government had offered a five-year deal[2] in exchange for his guilty plea. Again, defense counsel allegedly advised Paters that he could only be held responsible for the drugs he actually possessed (two kilograms of cocaine) and that he had nothing to lose by going to trial. Paters also alleged that defense counsel "did not explain the Sentencing Guidelines, especially the impact of relevant conduct, foreseeability, acceptance of responsibility, etc. on the sentence."

Paters claimed that defense counsel's erroneous advice concerning the proposed plea agreement was objectively unreasonable and that any reasonably competent attorney would have discussed the impact of relevant conduct and acceptance of responsibility on his sentence. He also claimed any reasonably competent attorney would have advised him to accept the proposed plea agreement. Additionally, Paters claimed that there was no viable theory of defense and, therefore, no reasonable basis for a recommendation to take the case to trial. With regard to the prejudice prong, Paters asserted that had defense counsel competently performed his duties regarding the proposed plea agreement, Paters would have accepted the plea agreement and received a sentence half as long as that which resulted from going to trial. In a signed "declaration" accompanying his motion, he claims he would have

---

**1.** Although the Antiterrorism and Effective Death Penalty Act of 1996 added a one-year statute of limitations for commencing collateral attacks, we stated in *O'Connor v. United States*, 133 F.3d 548 (7th Cir.1998) that no collateral attack filed by April 23, 1997 may be dismissed under § 2244(d) and the parallel provision added to 28 U.S.C. § 2255 by § 105 of the 1996 Act. *Id.* at 550 (quoting *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir.1996) (en banc), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).

**2.** Although neither the motion nor the appellate briefs are clear on this point, it appears that had Paters been held responsible only for two kilograms of cocaine his sentence would have been approximately five years. Paters' criminal history category was I; if he was held accountable for two kilograms of cocaine his base offense level would have been 28. U.S.S.G. § 2D1.1(c). Under these calculations, Paters' sentencing range would have been 78–97 months. If Paters had also received a two-level decrease for acceptance of responsibility, his offense level would have been 26 and his sentencing range 63–78 months, or approximately five to six and a half years.

accepted the plea agreement but for his attorney's advice.

Surprisingly, the government conceded all of the relevant facts for purposes of Paters' § 2255 motion. It conceded that defense counsel "advised Mr. Paters that he could be held responsible for the two kilograms with which he was involved and no more whether he stood trial or pled guilty." Government's Response at 2. The government also conceded that "[defense counsel] told Mr. Paters that he had nothing to lose by going to trial." *Id.* Although the government did not expressly concede the first prong of the *Strickland* test (objectively deficient representation), it remained silent on that issue.

The government relied on the prejudice prong instead. It asserted that, "[e]ven accepting the proposition that Mr. Paters' attorney acted incompetently in advising his client to proceed to trial," Paters could not establish prejudice. Accordingly, the government maintained that Paters did not sufficiently allege a Sixth Amendment violation and that his § 2255 motion should be denied.

We note that there was no § 2255 hearing. Instead, the district court assumed the truth of Paters' factual allegations. Although the district court made no express conclusion about the first prong of the *Strickland* test, the court treated the government's silence on the issue as a waiver. The court stated, "The government's response assumes that [defense counsel's] alleged error was objectively unreasonable." Order of April 29, 1997 at 4.

With regard to the prejudice prong, the district court said that Paters failed to allege a sufficiently prejudicial result of the assumed deficient performance. The court reasoned that, had Paters been sentenced under the alleged proposed plea agreement, his offense level would have been 28 (the level prescribed for defendants accountable for two to three and a half kilograms of cocaine) and the sentencing range would

have been 78–97 months.[3] Although the court cited no cases specifically on point, it concluded that the difference between the actual sentencing range of 121–151 months and the potential range of 78–97 months was not "significant" under *Durrive v. United States*, 4 F.3d 548 (7th Cir.1993), and thus it was insufficient to establish prejudice. The court denied Paters' § 2255 motion without holding an evidentiary hearing, but issued a certificate of appealability on the issue of ineffective assistance.

On appeal Paters argues that the district court should have compared Paters' actual sentence of 121 months with the 60–month deal allegedly promised in the proposed plea agreement. In the alternative, he argues that, even if the theory behind the district court's calculations was correct, Paters would have been entitled to at least a two-level reduction for acceptance of responsibility. Thus, the appropriate comparison should have been the difference between a sentencing range of 121–151 months and 63–78 months (the range for offense level 26). Finally, Paters asserts that, even if the district court compared the correct figures, the difference between a sentencing range of 121–151 months and 78–97 months is significant and sufficient to establish prejudice.

## II. ANALYSIS

■■ This court reviews de novo a district court's judgment denying relief under 28 U.S.C. § 2255. In order to prevail in this court on his Sixth Amendment claim, Paters must show that his attorney rendered substandard assistance and that Paters was prejudiced as a result. *E.g., Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Griffin v. United States*, 109 F.3d 1217, 1219 (7th Cir.1997). In the proceedings below, the government and the district court assumed that defense counsel's alleged error was objectively unreasonable. Since neither party has addressed the perfor-

---

3. The district court rejected Paters' argument that the appropriate comparison was between his actual sentence of 121 months and the government's alleged proposed sentence of five years. "[T]he government cannot promise a defendant a particular sentence; instead, the appropriate

sentencing guideline calculations are determined by the court after a defendant pleads guilty and are based on relevant conduct and the defendant's criminal history, as well as other factors." Order of April 29, 1997 at 7.

mance prong on appeal, only the prejudice prong remains.

The district court relied on *Durrive,* 4 F.3d at 548 for the prejudice analysis. It concluded that the correct test was whether the attorney's error rendered a "significantly" harsher sentence than if no error had occurred. In *Durrive,* we said that in order to establish prejudice resulting from mistakes made by counsel at sentencing, the defendant must show that the sentencing proceeding was unreliable or fundamentally unfair. *Durrive,* 4 F.3d at 550–51 (relying on *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). We held that a defendant could meet this standard only by establishing that the attorney's error produced a significant effect on his sentence. *Id.* at 551. We conclude that the district court erred in applying the *Durrive* test in this case.

This court has decided very few cases involving allegations of attorney incompetence resulting in the defendant's *rejection* of a plea agreement proposal. *See, e.g., United States v. Golden,* 102 F.3d 936 (7th Cir.1996); *Toro v. Fairman,* 940 F.2d 1065 (7th Cir. 1991); *Johnson v. Duckworth,* 793 F.2d 898 (7th Cir.1986). Of those cases *Golden* and *Johnson* were decided based on the performance prong of the *Strickland* test. *Golden,* 102 F.3d at 943; *Johnson,* 793 F.2d at 902. *Johnson* addresses the prejudice prong, but only in dicta. *Johnson,* 793 F.2d at 902 n. 3. Therefore, only *Toro* addresses the issue on point.

The *Toro* test has two parts. The court should consider whether Paters established (1) through objective evidence that (2) there is a reasonable probability that he would

have accepted the alleged proposed plea agreement absent defense counsel's advice. *Toro,* 940 F.2d at 1068; *see Johnson,* 793 F.2d at 902 n. 3 (in dicta, doubting defendant's ability to establish prejudice because he "does not argue or allege ... that there is a reasonable probability that, but for counsel's errors, he would have accepted the plea agreement").

In *Toro,* unlike *Durrive,* we focused exclusively on the objective evidence standard and disregarded the degree of disparity between the six-year proposed plea agreement and twenty-year actual sentence. *Toro,* 940 F.2d at 1066. Since Toro produced no objective evidence, we held that his "statement [that he 'would have had to be insane not to accept the plea agreement'] is self-serving and alone, insufficient to establish ... a reasonable probability that he would have accepted the plea." *Id.* at 1068. Similarly, in *Johnson,* we ignored the difference between the plea agreement's fifteen-year sentence and the defendant's actual sentence of thirty years when discussing, in dicta, the prejudice component of *Strickland.* 793 F.2d at 902 n. 3. Instead, we stated that the defendant could not prove that he probably would have pleaded guilty. *Id.*

We find *Durrive* distinguishable on several grounds.[4] First, whereas Durrive merely sought a two level adjustment in his sentence, Paters challenges an aspect of the plea bargaining process. *Cf. United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."); *Boria v. Keane,* 99 F.3d

4. Although we do not apply the *Durrive* test here, we note that the attorney's alleged error in this case wrought a more significant effect on defendant's sentence than in *Durrive.* *Durrive* states that "the difference between 120 months and ... 98 ... does not demonstrate that the actual sentence is 'unreliable ... or fundamentally unfair.'" *Durrive,* 4 F.3d at 551. In this case the actual sentencing range was 121–151 months and Paters' actual sentence was 121 months. The alleged plea agreement was for 60 months.

We acknowledge that the district judge would not have been required to accept the plea agreement. As the district court said,

Had Paters pled guilty instead of proceeding to trial, the evidence would have indicated, as Paters admits, that the appropriate quantity of drugs was at least two kilograms, which would have resulted in an offense level of 28. This difference would have reduced Paters's sentencing range from 121–151 months to 78–97 months, leading to at least a twenty-four month reduction and at most a forty-three month reduction.

Order of April 29, 1997 at 7. Thus, regardless of which formula is adopted, the effect of the attorney's alleged error in this case rendered a more "significant" effect than in *Durrive.*

492, 496–97 (2d Cir.1996) ("The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case.").

Second, in *Durrive* we emphasized that the challenge should have been raised on direct appeal, and that the petitioner was merely attempting to avoid his default by bringing his claim under the Sixth Amendment. *See Durrive*, 4 F.3d at 551 ("Adjusting the offense level by two or three steps is exactly the routine decision that is supposed to be handled at sentencing and on direct appeal."). Unlike the claim involved in *Durrive*, Paters' claim could not have been raised on direct appeal because it relies upon proof not in the record on direct appeal. On appeal Paters could not have pointed to evidence in the record describing defense counsel's advice, nor did the record contain evidence of the government's alleged plea offer. Paters is not using an ineffective-assistance claim to circumvent his failure to bring some other claim on direct appeal. *Durrive* is thus distinguishable on this ground as well.

Since *Fretwell* and *Durrive*, we have continued to apply the *Toro* standard for analyzing prejudice in the context of ineffective assistance of counsel during plea negotiations. Although such cases involve attorney errors leading to the *acceptance* of a plea (rather than rejection as in this case), they rely on *Toro* and the *Toro* standard. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir.1996) ("In order to show prejudice from ineffective assistance of counsel that led to the entering of a plea, the defendant must establish through objective evidence a reasonable probability that, but for counsel's advice, he would not have accepted the plea," and citing *Toro*.); *see also United States v. Woolley*, 123 F.3d 627, 635 (7th Cir.1997); *United States v. Jackson*, 93 F.3d 335, 337 (7th Cir.1996). In addition, other courts of appeals have employed the *Toro*

prejudice standard. *See Boria v. Keane*, 99 F.3d 492, 497 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997); *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir.1995).

■ The district court applied the wrong prejudice analysis in this case. In order to establish prejudice, Paters must show (1) through objective evidence that (2) there is a reasonable probability that, but for counsel's inadequate performance, he would have accepted the government's offer. Paters has certainly met the second prong of that test. He has *alleged* a reasonable probability that, but for counsel's inadequate performance, he would have accepted the government's offer. Declaration in Support of § 2255 Motion at 3 ("Under more befitting legal guidance, I am certain that I would have been amenable to conditions of the plea bargain.").

■ Thus, we must ascertain whether objective evidence shows that there is a reasonable probability that Paters would have accepted the plea deal but for his attorney's advice. In support of his motion, Paters submitted affidavits from his parents. His parents attest that they personally attended pre-plea offer conferences in which defense counsel said that Paters' sentence could not exceed 5 years.[5] *See, e.g.*, Affidavit of Mary Paters ("Together, with my husband, I was present at meetings between my son and his attorney .... On those occasions, [defense counsel] described a maximum of sixty months of incarceration as the related punishment for Robert's crime.").

Such evidence is certainly not overwhelming. And it does not prove the ultimate question—that there is a reasonable probability that Paters would have *accepted* the plea deal but for his attorney's advice. Instead, it only shows that the alleged advice was in fact offered.[6]

---

5. The affidavits from his parents also suggest that Paters received a plea offer and seriously considered it. However, these statements do not reflect personal knowledge on the part of the parents, but merely relate naked allegations of Paters himself. Such tenuous assertions fall short of being objective evidence.

 Paters also submitted a "Declaration in Support of 28 U.S.C. § 2255 Motion" which he signed under penalty of perjury pursuant to 28 U.S.C. § 1746. However, this document does not constitute "objective evidence" under *Toro*.

6. We think it would have been plausible for Paters to provide more compelling evidence that, but for his attorney's advice, he would have accepted the plea deal. Since the attorney-client privilege is petitioner's to waive, *see Garcia v.*

However, when we view such evidence in conjunction with the government's factual concessions, we think a hearing is warranted. Government's Response to § 2255 Motion at 2 (accepting as true that defense counsel told Paters he could be held responsible for no more than two kilograms whether he stood trial or pled guilty); *see also* Dist. Ct. Order of April 29, 1997 at 3 ("The government accepts Paters' version of the relevant facts as true for purposes of this motion."). For purposes of *Toro*'s objective evidence test, the concessions and the affidavits together are sufficient to warrant a hearing.

Although Judge Coffey compares this case to *Prewitt v. United States*, 83 F.3d 812 (7th Cir.1996), the cases are readily distinguishable. In *Prewitt*, petitioner claimed that the prosecutor intentionally delayed his indictment in order to deny him the benefit of a guideline provision that was amended during the interim. In *Prewitt*, the government did not concede, but vigorously challenged Prewitt's version of the facts. The court said that "Prewitt's lack of submission must be contrasted with the facts as the government has relayed them." *Id.* at 819. Turning to the facts of this case, however, the government appears to relay the very same facts listed on

Paters' § 2255 petition. The concessions by the government lower the petitioner's evidentiary burden.[7] *Cf. United States v. Marvin*, 135 F.3d 1129, 1139 (7th Cir.1998) ("[S]tipulations of fact ... obviate the need for appellate review of factual findings ....").

In addition, Prewitt had absolutely no personal knowledge regarding the facts underlying his allegation. He did not know why the indictment was delayed, but could only speculate. Therefore, his affidavit could not constitute evidence supporting his claim. Thus, Prewitt offered absolutely no proof—no evidence—in support of his allegation that the prosecutor delayed the indictment in order to deny Prewitt the benefit of a guideline provision that was amended during the interim. In Paters' case, however, we have parental affidavits and government concessions which tend to support Paters' claim. The "search for the truth" to which Judge Coffey refers can best be completed by conducting a hearing.

Although the district court said that the government conceded all relevant facts, it is not clear whether the government has conceded the ultimate issue—that there is a reasonable probability that Paters would have accepted the plea deal but for his attor-

*Zenith Electronics Corp.*, 58 F.3d 1171, 1175 (7th Cir.1995) ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation."), one way for Paters to establish his reaction to the plea would be to submit an affidavit from defense counsel. *See United States v. Day*, 969 F.2d 39 (3d Cir.1992) (stating that lawyer's corroboration "might qualify as sufficient confirming evidence" that petitioner would have accepted plea offer but for attorney's advice). As another illustration, Paters could have submitted an affidavit from the Assistant U.S. Attorney establishing that the government in fact offered a plea agreement.

7. Judge Coffey argues that the district court should not have ordered the government to answer the § 2255 petition on grounds that petitioner offered insufficient evidence to warrant an answer. *See* Judge Coffey's Opinion at 1051–52 (citing Rule 4(b) of the Rules Governing § 2255 Proceedings). However, since the government has not challenged the court's order requiring an answer, the issue is waived. *See Nichols v. United States*, 75 F.3d 1137, 1145 n. 17 (7th Cir.1996) (stating that government waives non-jurisdictional argument by failing to raise it on appeal).

Even if the government had properly raised the issue, it is still not clear that we would review an erroneous order requiring the government to answer a § 2255 petition. Like a certificate of appealability, a judge's initial consideration of a § 2255 petition under 4(b) is a screening device:

The certificate [of appealability] is a screening device, helping to conserve judicial (and prosecutorial) resources .... Once a certificate has issued, however, the case proceeds to briefing and decision; the resources have been invested. It is too late to narrow the issues or screen out weak claims .... [O]nce the briefs have been written and the case heard, there is little point in scrutinizing the certificate of appealability. An obligation to determine whether a certificate should have been issued, even if the parties do not present this issue for decision—a step entailed by the conclusion that a proper certificate is a jurisdictional requirement—would increase the complexity of appeals in collateral attacks and the judicial effort required to resolve them, the opposite of the legislative plan. So we proceed to the merits as the parties have presented them.

*Young v. United States*, 124 F.3d 794, 799 (7th Cir.1997).

ney's advice. We remand for a hearing on this issue. We also note that at this procedural posture, the district court has a variety of options at its disposal. *See, e.g.,* Rule 7, Rules Governing Section 2255 Proceedings (permitting parties to expand the record). The district court's order is VACATED and the case is REMANDED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

I am pleased to join Judge Eschbach's opinion for the court, but I write separately to comment briefly on the requirement in this circuit's cases that someone like Paters, who alleges that he received ineffective assistance of counsel in deciding to reject a proposed plea agreement, must show through *objective evidence* even in advance of a hearing that but for counsel's faulty advice, he would have accepted the proposed plea. *See Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir.1991), *cert. denied,* 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992); *see also McCleese v. United States,* 75 F.3d 1174, 1179 (7th Cir.1996). The court faithfully follows those decisions today and suggests, despite the absence of a government challenge on the point, that the evidence Paters submitted in connection with his section 2255 petition may not satisfy that requirement. (*See ante* at 1047–48 & nn. 5–6.) Although I certainly acknowledge that our cases do impose an objective evidence requirement in this context, I am quite frankly at a loss to understand why the prejudice component for this type of claim—ineffective assistance of counsel in the context of a proposed plea—should be treated any differently than the prejudice component for any other type of ineffectiveness claim. In no other setting do we require evidence of this sort before the petitioner may obtain a hearing on his claim of prejudice, and I therefore do not believe that such a requirement should be imposed in this context either.

None of the decisions in this circuit that recite the objective evidence rule have articulated any rationale for requiring such evidence in this context but in no other. Indeed, the decision from which the rule is derived—*Toro v. Fairman, supra*—merely imposes the requirement without any explanation, adding a *"cf."* cite to *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Toro,* 940 F.2d at 1068. But as *Toro's "cf."* cite itself indicates, *Strickland* does not impose an objective evidence requirement. *Strickland* merely articulates the standard a petitioner must meet in order to show prejudice—"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. 2052. And the Court defined "reasonable probability" in *Strickland* as "a probability sufficient to undermine confidence in the outcome." *Id.* That standard clearly is less demanding than a preponderance of the evidence standard, which the *Strickland* Court explicitly rejected as too stringent. *See id.* Yet in my view, our "objective evidence" requirement effectively reimposes the preponderance standard that *Strickland* rejected, because it seems to require something more than standard testimonial evidence from the party most able to speak to the issue under consideration. In my view, such a requirement cannot be squared with *Strickland,* and our cases imposing the standard have offered nothing by way of rationale to persuade me otherwise.[1]

---

1. My good friend and colleague Judge Coffey takes issue with my assertion that the objective evidence requirement in this context is derived from *Toro,* contending that the requirement has been a part of this circuit's jurisprudence for over four decades. (*Post* at 1059.) Yet as Judge Coffey's own opinion makes clear, the decisions cited for that principle address only the requirement that a § 2255 petition be accompanied by an affidavit containing a *quantum of proof* supporting the petitioner's claim. (*See post* at 1052–53.) Paters' petition was supported by such an affidavit, which asserted that had he been properly advised by counsel, he would have accepted

the plea offered by the government. Because Paters is the only individual with direct knowledge as to what course he would have chosen, his affidavit certainly satisfies *Prewitt*'s "actual proof" standard. *See Prewitt v. United States,* 83 F.3d 812, 819 (7th Cir.1996). As Judge Eschbach explains, this case is vastly different from *Prewitt,* where the petitioner made unsupported assertions about the reasons for a government delay, something of which he had no personal knowledge. (*See ante* at 1048.) In the specific context of an ineffectiveness claim addressed to counsel's handling of a plea offer, *Toro* seems to require something more than actual proof—that

The unarticulated yet evident reason for the objective evidence rule, of course, is that we are reluctant to accept the petitioner's own assertion that he in fact would have entered a guilty plea had he been properly advised at the plea stage. *See Toro,* 940 F.2d at 1068; *see also McCleese,* 75 F.3d at 1179; *Johnson v. Duckworth,* 793 F.2d 898, 902 n. 3 (7th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986). But in my view, that concern can be addressed in other ways without crafting a legal rule that is inconsistent with *Strickland.* For example, if all the petitioner were to offer to establish prejudice was his own self-serving statement that he would have pled guilty had he been properly advised, then I think a district judge would certainly have the discretion to find such evidence insufficient under the facts of a given case. But I also can imagine a circumstance where such a statement may be deemed sufficient—*e.g.,* where the ineffectiveness of counsel worked such an unforeseen sentencing detriment that a judge could look at the case objectively and say that, of course, the defendant would have accepted the proposed plea had he been competently advised. Given the difficulty of producing so-called objective evidence in this context, I do not believe that our district judges should be deprived of the discretion to make those sorts of determinations under the facts of particular cases.

Finally, I am concerned by the court's suggestion that Paters could meet the objective evidence requirement by submitting an affidavit from a government attorney to show that a plea in fact was proposed. (*Ante* at 1047–48 n. 6.) As I understand it, the government has not even contested that a plea was proposed in this case, so I am not at all certain what such an affidavit would contribute to the prejudice analysis. It seems to me, moreover, that such an affidavit would address the ineffectiveness prong in any event, and not the prejudice prong that is at issue here. In this case, the government bypassed the ineffectiveness prong below, and thus we are concerned only with whether Paters would have pled guilty had he been

properly advised. The proposed government affidavit would not address that issue.

In the end, although I join Judge Eschbach's opinion, I believe that the objective evidence requirement that our cases impose in the plea context is unsound. I certainly agree, however, that the affidavits Paters did submit, along with the government's concessions below, are sufficient to require the district court to conduct a hearing on *Strickland's* prejudice prong even under *Toro.*

COFFEY, Circuit Judge, dissenting and concurring.

Robert Paters claims in his § 2255 petition that, had he received adequate counsel, he would have accepted the government's alleged offer of sixty months' imprisonment in exchange for his guilty plea to charges of conspiring to possess cocaine, with intent to distribute the same, in violation of 21 U.S.C. §§ 841(a) and 846, rather than run the risk of receiving the 121 month sentence ultimately imposed upon him. The majority concludes that this allegation of inadequate representation, by itself, is not enough to satisfy the prejudice prong of the ineffective assistance of counsel test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Following our holding in *Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir.1991), the majority opines that Paters was, and is, obligated to submit objective evidence in support of his claim, and remands the petition in order that the district court may determine whether Paters has adduced, or can produce, such objective evidence. I concur in the majority's holding to the extent that I agree *Toro* requires Paters' allegations to be grounded in objective evidence, which he has failed to do.

I dissent because I am convinced that the scope of the majority's remand, which directs the district court to conduct a hearing and focus solely on the issue of whether "there is a reasonable probability that Paters would have accepted the plea deal but for his attorney's advice," (Maj. Op. at 1048–

---

is, objective evidence in addition to the testimony of the most knowledgeable witness. *See Toro,* 940 F.2d at 1068. My objection to the *Toro*

standard is thus not answered by reliance on the general habeas pleading standard, as Judge Coffey would suggest.

49), *is far too limited* in that it assumes Paters' petition was sufficient to warrant consideration on its merits in the first place. As I discuss in greater detail, the trial judge should have summarily dismissed Paters' petition for failure to comply with this circuit's clear mandate in *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996), and its numerous companion cases which require that, *at the time Paters filed his habeas petition, he was obligated to present objective evidence*[1] *to support each and every allegation therein, including those allegations relating to prejudice and ineffective counsel.* I would thus instruct the district court to summarily dismiss Paters' petition on remand out of his inability to satisfy *Prewitt*.

I write separately also because I feel it necessary to express my displeasure with the lack of respect displayed towards the defense attorney, an officer of the court, who defended Paters at trial and who stands accused of ineffective assistance. Beyond the self-serving statements of the twice-convicted criminal defendant Paters, as well as those statements of his parents, which relate in relevant part only to what their son *told them*, the record is barren of support for his claim of ineffective assistance of counsel. The government conceded to Paters' unsupported allegations without conducting any type of investigation to determine whether or not there was any merit to them. Considering the dearth of evidence in the record to support Paters' claim of ineffectiveness, as well as the disastrous effects that charges of incompetence can wreak upon an attorney's professional reputation, I find this lack of diligence on the part of the Assistant United States Attorney ("AUSA") who defended Pa-

ters' petition[2]—supposedly an active participant in the adversarial system—to be almost an abdication of the government's obligation in the search for justice. To prevent a recurrence of this unfortunate situation in the future, I would encourage the Judicial Conference to adopt a rule requiring that an attorney who is accused of ineffective counsel be given timely notice of the accusation and, if necessary, an opportunity to defend himself or herself.

**A. A § 2255 Petitioner, When Filing His "Extraordinary" Writ, Must Submit an Affidavit Containing Objective Evidence, as Opposed to Unsupported Assertions, in Order to Avoid Dismissal of His Petition.**

Reflecting the fact that § 2255 relief *"is an extraordinary remedy," Waletzki v. Keohane*, 13 F.3d 1079, 1081 (7th Cir.1994) (emphasis added), a § 2255 petition (a civil action) is subject to a more stringent pleading requirement than an ordinary civil complaint.[3] While typically a civil complaint requires only that a plaintiff present allegations in support of his claim,[4] the § 2255 petition "must be accompanied by a *detailed and specific affidavit* which shows that the petitioner had *actual proof of the allegations* going beyond *mere unsupported assertions.*" *Prewitt*, 83 F.3d at 819 (citations omitted) (emphasis added). Should the petitioner fail to submit a petition containing "objective evidence" in support of his claims and, thus, not meet the threshold pleading standard set forth in *Prewitt*, the judge is obligated to dismiss the petition without requiring the government to answer. *See* Rule 4(b) of the Rules Governing § 2255 Proceedings (*"If it*

---

1. *Prewitt* does not use the term "objective evidence," but instead refers to "actual proof" in support of the habeas petitioner's allegations. 83 F.3d at 819. Because the two terms, as used in *Toro* and *Prewitt*, are virtually the same in meaning, I use them interchangeably in this opinion.

2. Because the government attorney who defended Paters' § 2255 petition and the prosecutor at Paters' trial are two different individuals, I shall hereafter refer to them as the "AUSA" and "former AUSA," respectively.

3. It is well established that pleadings submitted by prisoners acting *pro se* should be liberally

construed. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir.1998) (quoting *McNeil v. United States*, 508 U.S. 106, 112–13, 113 S.Ct. 1980, 1983–84, 124 L.Ed.2d 21 (1993)). In this case, however, Paters was represented by counsel at all times during the course of these § 2255 proceedings, from the time he filed his habeas petition through appeal.

4. *See* Fed. R. Civ. P. 8(a) ("A pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief....").

*plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading....")* (emphasis added). *Prewitt*'s affidavit requirement is consistent with the federal habeas statute, 28 U.S.C. § 2255, and the rules which govern § 2255 proceedings. While the text of § 2255 itself does not mandate that a habeas petition be accompanied by an affidavit, the statute does expressly provide that "any district court may by local rule require that motions filed with it ... be in the form prescribed by the local rule." Rule 2(b) of the Rules Governing § 2255 Proceedings. And, in fact, every district court within this circuit's jurisdiction has a requirement that an affidavit, or at least a certification with the "force and effect" of an affidavit, accompany the § 2255 petition. That is, when a petition contains language to the effect of that set forth in 28 U.S.C. § 1746(2),[5] "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct," such petition, and the declaration(s) submitted along with

5. Title 28 U.S.C § 1746, in general terms, provides that an individual may submit an unsworn declaration, certificate, verification, or statement (i.e., a habeas petition) which represents that its contents are "true under penalty of perjury" in lieu of a sworn declaration or affidavit.

6. The form of the § 2255 petition in the Rule 2 appendix also contains the language of 28 U.S.C. § 1746, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."

7. In 1988, authorities in the jurisdiction of the United States District Court for the Northern District of Indiana arrested Prewitt and charged him with mail fraud and filing a false tax return in connection with a scheme whereby he and two other individuals sold stock in a corporation whose only assets were the investors' own funds. *See Prewitt*, 83 F.3d at 815. Prewitt pleaded guilty to these charges and was sentenced to concurrent prison terms of three years on the mail fraud counts and three years probation on the false tax return count. *Id.* From late 1989 through mid–1990, while released on bond pending resolution of the Northern District federal charges, Prewitt and two other men defrauded

it, are tantamount to affidavits. *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992) ("[W]e believe that the stated purpose of 28 U.S.C. § 1746 is accomplished whether the verification statement is handwritten or typewritten and simply undersigned. *Therefore, a verified complaint in either form would have the same force and effect as an affidavit....*") (emphasis added).

Each and every federal district court within this circuit has chosen to exercise its authority under Rule 2(b), *supra*, and require petitioners to file § 2255 petitions that include the exact language of 28 U.S.C. § 1746(2), namely, "I declare under penalty of perjury that the foregoing is true and correct. Executed on (date)."[6] It is thus a circuit-wide rule that § 2255 petitions must be accompanied by an affidavit. It is likewise evident that *Prewitt*'s affidavit requirement is in accord with the habeas statute.

The *Prewitt* case dealt with the § 2255 petition of a convicted criminal in search of habeas relief alleging that the government intentionally delayed seeking an indictment against him in order to deprive him of the benefit of § 5G1.3(c) of the Sentencing Guidelines and, in turn, a shorter sentence.[7]

another thirteen people in a different investment scheme (the "second scheme"). *Id.* One week before his release from prison on the Northern District convictions, in October 1992, a grand jury sitting in the United States District Court for the Southern District of Indiana indicted Prewitt for his involvement in the second scheme. Following a jury trial, Prewitt was convicted of these charges, and the federal Southern District Court sentenced him to twenty-seven months' imprisonment and three years of supervised release. Prewitt later unsuccessfully moved the Southern District Court to declare his sentence concurrent with the Northern District sentence. He thereafter filed a motion to vacate the Southern District sentence pursuant to 28 U.S.C. § 2255, arguing that but for the government's intentional delay in indicting him in the Southern District, he would have still been in prison under his Northern District sentence when he was sentenced in the Southern District, entitling him to the benefit of a shorter sentence under § 5G1.3(c). Specifically, the old version of § 5G1.3(c) provided in part, "[T]he sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense."

This court held that Prewitt's petition was deficient in that he *"has provided only allegations, rather than proof, of intentional delay. Suppositions about memoranda between investigators and prosecutors ... cannot carry the day, as conclusory allegations do not suffice."* *Prewitt*, 83 F.3d at 819–20 (emphasis added) (citing *United States v. Canoy*, 38 F.3d 893, 902 (7th Cir. 1994)). Restated, Prewitt failed to submit objective (actual) evidence of the government's intentional delay he claimed. In the case before us, there is no documentation from which to speculate that a plea offer was even made to Paters—we have neither a plea agreement nor any written memorialization of such an agreement in the record. In fact, Paters has not even provided the name of the government attorney who supposedly extended the alleged offer of a plea. The rule in *Prewitt* has long been part of this circuit's jurisprudence, and, as I explain in the ensuing discussion, it is apparent that Paters' § 2255 petition falls short in satisfying it here. *See Humphrey v. United States*, 896 F.2d 1066, 1070 (7th Cir.1990), *cert. denied*, 498 U.S. 938, 111 S.Ct. 342, 112 L.Ed.2d 306 (1990) (*"mere unsupported allegations do not warrant a hearing."*) (citations omitted) (emphasis added); *United States ex rel. Edwards v. Warden*, 676 F.2d 254, 256 n. 3 (7th Cir.1982) (*"[Petitioner] did not file the 'detailed and specific affidavit' showing proof 'beyond mere unsupported assertions' required by this court before a hearing must be granted."*) (citation omitted) (emphasis added); *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir.1976), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976) (*"the [§ 2255] petition must be accompanied by a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions."*) (footnote omitted) (emphasis added); *United States v. Lowe*, 367 F.2d 44, 45–46 (7th Cir.1966) (§ 2255 petition found deficient because it *"does not show that [petitioner] has proof sufficient...."*) (emphasis added) (citing *Mitchell v. United States*, 359 F.2d 833, 836–37 (7th Cir.1966)); *United States v. Mathi-*

son, 256 F.2d 803, 805 (7th Cir.1958), *cert. denied*, 358 U.S. 857, 79 S.Ct. 77, 3 L.Ed.2d 91 (1958) (*"A [§ 2255] petitioner's allegation supported only by his own assertions are not sufficient."*) (emphasis added) (citations omitted); *United States v. Trumblay*, 256 F.2d 615, 617 (7th Cir.1958), *cert. denied*, 358 U.S. 947, 79 S.Ct. 355, 3 L.Ed.2d 353 (1959) (court found § 2255 petition to be deficient because petitioner *"makes no showing that he has any proof thereof .... [The allegations] must be based on more than unsupported allegations."*) (emphasis added) (citation omitted); *United States ex rel. Swaggerty v. Knoch*, 245 F.2d 229, 230 (7th Cir.1957) (court found § 2255 petition to be deficient because petitioner *"makes no showing that he has any proof of his allegations other than his unsupported assertions."*) (emphasis added).

### B. Paters' Habeas Petition Must be Dismissed for Failing to Meet the Requisite Standard of Pleading Articulated in Prewitt.

*Paters' § 2255 petition suffers from the same problem as Prewitt's in that it is barren of any objective evidence and contains nothing but selfserving assertions.* Paters' petition makes two allegations regarding ineffective counsel. Initially, Paters avers that the government, at an undefined time and place, offered him (Paters) a plea agreement, through his defense counsel, whereby he would have allegedly received a sixty-month sentence if he entered a plea of guilty to the charges against him, rather than the 121 months' imprisonment to which he was ultimately sentenced following his conviction. Paters goes on to merely allege that his defense attorney recommended that he reject this plea offer and put the government to its proof at trial because he had "nothing to lose."

In an attempt to corroborate these allegations, Paters submits a self-serving Declaration,[8] together with affidavits of his mother and father (neither of whom was present when the alleged plea agreement was communicated to Paters), who base their asser-

---

8. The term "Declaration," as it is used throughout the duration of this opinion, means a state-

ment submitted under penalty of perjury pursuant to 28 U.S.C. § 1746.

tion that their son received a plea offer not on direct knowledge that one was made to him through his attorney, but solely on what their son told them his counsel allegedly said to him. In Paters' Declaration, he states that "*[my attorney] related a plea bargain [to me] which had been offered by the government (i.e., . . .[sic] five year sentence in exchange for a guilty plea)*," and that his counsel advised him to reject the plea agreement and go to trial, and he had "nothing to lose" by doing so. Paters, who made clear that he was not present during any alleged plea negotiations, thus played no role in the purported discussions leading up to the alleged plea agreement, and does not claim any *personal knowledge* concerning the offer of a plea agreement. *See Mathison*, 256 F.2d at 805 ("[Petitioner] did not assert any material facts to which he has shown that he had a *personal knowledge* . . . . A petitioner's allegation supported only by his own assertions are not sufficient.") (emphasis added) (citations omitted). Nor does he point to any objective evidence, or "actual proof beyond his mere assertions," to support his claims. The majority seems to assume that a plea offer was made to Paters while, at the same time, noting that the record is devoid of any evidence (outside of Paters' Declaration and his parents' affidavits) that the government ever offered a plea to him. This is an assumption which, in my view, does not lend itself to the truth-seeking obligation inherent in our roles as federal appellate judges. Under *Prewitt*, Paters' unsupported allegations cannot "carry the day." .

The two affidavits Robert Paters' parents submitted, which are based on what he told them, thus are no more helpful than his own Declaration. Paters' father attested:

My son told me that he received a call that evening from his defense counsel, informing him that the government had offered him a plea agreement for sixty months of incarceration in exchange for a guilty plea. Defense counsel advised Robert to reject the offer because he would not receive more than sixty months even if he proceeded to trial.

Paters' mother declared, "I specifically recall that my son Robert came to our home a few days prior to the commencement of his jury trial. At that time, he told me of his conversation with his defense counsel, apprising him of the government's plea offer (sixty months in exchange for a guilty plea)." As these averments are based solely on their son's self-serving statements,[9] they likewise fall short of meeting the standards of objective evidence.

Paters has offered nothing more in support of his allegations of ineffective counsel, and I am thus convinced that he has failed to meet the § 2255 pleading requirements articulated in *Prewitt*. Moreover, this habeas proceeding has been riddled with errors, both procedural (i.e., the judge failed to properly perform his screening function under Rule 4(b)) and legal (i.e., the district court applied the wrong prejudice standard), and the government's ill-advised decision to concede to facts which, outside Paters' and his parents' sworn statements, are without support has left us with a very barren record to review. For these reasons, I would urge the majority to instruct the district court to dismiss Paters' petition on remand. *See* Rule 4(b) of the Rules Governing § 2255 Proceedings. Paters would at that time have the opportunity to gather objective evidence in support of his claim of ineffective assistance of counsel (if, in fact, such facts exist), such as a statement from his original defense attorney and/or the AUSA that a plea offer was indeed made, and re-file his petition in the district court with evidence sufficient to satisfy the threshold test of objective evidence. *See Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 237, 136 L.Ed.2d 167 (1996) ("When a petition for habeas corpus is dismissed . . . because the petitioner has not presented adequate substantiation of his claim to cross what we have referred to as the threshold of plausibility, the filing of a successive petition cannot be barred as an abuse of the writ, because there has not yet been a determination of the legality of the petitioner's detention.").

---

**9.** Paters' parents both attested that they attended a pre-trial conference with their son and his attorney, but it is unequivocal that no plea was offered at that time.

The majority disagrees with my reliance on *Prewitt*. Citing to *United States v. Marvin*, 135 F.3d 1129, 1139 (7th Cir.1998), the author of the majority opinion opines that "[t]he concessions by the government [as to ineffective counsel] lower the petitioner's evidentiary burden." (Maj. Op. at 1048). I fail to understand how he divines this principle of law from *Marvin*. While it is true, as we stated in *Marvin*, that "stipulations of fact ... obviate the need for appellate review of factual findings," *id.* (citation omitted), it does not follow that a habeas petitioner's "evidentiary burden" is somehow lowered as the result of such stipulation. In fact, because Rule 4(b) of the Rules Governing § 2255 Proceedings, as I pointed out previously, mandates that the district judge summarily dismiss any § 2255 petition which fails to meet the *Prewitt* standard, *even before ordering the government to submit an answer to the petition*, unsupported allegations therein must never enjoy the benefit of a concession.

This returns us to the question of whether Paters has satisfied *Prewitt*. The majority suggests that he has because, in this case, "we have parental affidavits and governmental concessions which tend to support [his] claim." (Maj. Op. at 1048). I repeat, because I believe it is worth repeating, that the government's concession is irrelevant on the issue of whether Paters' petition meets the *Prewitt* pleading standard—if the petition, *as submitted*, failed to satisfy the *Prewitt* standard, the trial judge was obligated at that time to dismiss it *sua sponte* before directing the government to respond to its allegations. I move on to consider Paters' parents' affidavits as they relate to the ineffectiveness prong of the *Strickland* test. Of course, in order for Paters to establish that his counsel rendered ineffective assistance, there must have been an offer of a plea agreement, yet the majority points to nothing in Paters' parents' affidavits suggesting that they had *personal* knowledge of any such offer of a plea agreement. Indeed, the majority admits that "[t]he affidavits from [Paters'] parents ... *suggest* that Paters received a plea offer and seriously considered it. However, these statements do not reflect personal knowledge on the part of the parents, but

merely relate allegations of Paters himself. Such tenuous assertions fall short of being objective evidence." (Maj. Op. at 1047 n.5 (emphasis added)). How can the majority, in the same breath, go on to state that these same "tenuous assertions" are sufficient to satisfy *Prewitt* and, in turn, sustain a viable § 2255 petition? After all, if the parents' affidavits were based solely on what their son told them, how can their statements of knowledge of the alleged plea offer be any more probative than Paters'? Because Paters' allegations are insufficient to overcome *Prewitt*, his parents' affidavits, which largely do nothing but repeat what Paters told them, likewise fall short of constituting objective evidence. With all due respect to the majority, *Prewitt* cannot be distinguished on its facts, and in my opinion it is a misapplication of this circuit's law to suggest otherwise.

The majority also opines that, "since the government has not challenged the court's order requiring an answer, the [*Prewitt* and Rule 4(b) summary dismissal] issue is waived." (Maj. Op. at 1048 n.7). Once again, I am forced to disagree with the majority. While the general rule is that nonjurisdictional issues not raised before the district court are waived on appeal, *see Nichols v. United States*, 75 F.3d 1137, 1145 n. 17 (7th Cir.1996), *this rule does have its exceptions*. For example, in *Kurzawa v. Jordan*, 146 F.3d 435 (7th Cir.1998), this court explained that, if the government neither explicitly nor implicitly forgoes its defense that a § 2254 habeas petition is procedurally faulted, " 'we may make *sua sponte* inquiry into whether a procedural default is manifest....' " *Id.* at 440 (quoting *Galowski v. Murphy*, 891 F.2d 629, 634–35 n. 11 (7th Cir.1989), *cert. denied*, 495 U.S. 921, 110 S.Ct. 1953, 109 L.Ed.2d 315 (1990)); *see also Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir.1988), *cert. denied*, 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989) ("[A] district court is permitted ... to raise [the waiver] defense *sua sponte*, [but] the court is not permitted to override the state's decision implicit or explicit ... to forego that defense.").

*As a matter of procedure*, the § 2255 petitioner is obligated to file a petition that is

*grounded in objective evidence* sufficient to satisfy *Prewitt,* and, in turn, overcome the Rule 4(b) bar. *If he or she does not submit "actual proof of the allegations going beyond mere unsupported assertions," Prewitt,* 83 F.3d at 819 (citation omitted), *the petition must be summarily dismissed. See* Rule 4(b) of the Rules Governing § 2255 Proceedings ("If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified."). Should the trial judge commit error and fail to dismiss a petition that falls short of satisfying *Prewitt,* and the government remains silent on the issue in the district court and on appeal, *Kurzawa* and *Henderson* would suggest that this court may, in its discretion, consider the procedural default question. The question in the present case thus becomes whether the government has either explicitly or implicitly foregone its defense that Paters' petition was procedurally faulted. It is manifest from the record that there is no explicit waiver of that defense here (i.e., at no time did the AUSA state that he did not wish to pursue a procedural default argument, as in *Henderson,* 859 F.2d at 498), and the mere fact that the government remained silent on the procedural default question should not be interpreted as evidence that it implicitly waived the issue. *See Kurzawa,* 146 F.3d at 440 ("[T]he State [does not] ... suggest[ ] that this appeal is somehow procedurally faulted, ... [but] the State has not foregone a waiver defense, either explicitly or implicitly."). In sum, because the government has neither explicitly or implicitly foregone the procedural default defense in this case, I am of the opinion that we may consider whether or not Paters' habeas petition should be dismissed under Rule 4(b) for failing to set forth objective evidence that he received ineffective as-

sistance of counsel at trial, as required by *Prewitt, supra.*

I further add that it is the law of this circuit that, in the effort to reach the correct result and administer justice, we may *sua sponte* address issues on appeal which the parties have failed to raise as bases for affirming, reversing or remanding the judgment of the district courts. *See, e.g., Huntzinger v. Hastings Mut. Ins. Co.,* 143 F.3d 302, 311, 314 (7th Cir.1998) (affirming judgment on grounds not set forth in parties' briefs); *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing,* 136 F.3d 1116, 1122 (7th Cir.1998) (" 'Although it is true that we normally refuse to consider arguments not presented, it is within our discretion to consider such arguments when to do so is in the interests of justice.' ") (quoting *United States v. Leichtnam,* 948 F.2d 370, 383 (7th Cir. 1991) (Coffey, J., concurring) (citing *Garlington v. O'Leary,* 879 F.2d 277, 282–83 (7th Cir.1989); *Andrews v. United States,* 817 F.2d 1277, 1278–79 n. 1 (7th Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987))). The interests of justice certainly favor *sua sponte* consideration of *Prewitt* in this case. Justice demands that the law be abided by faithfully, and that statutory requisites be fulfilled. In this case, the district court failed to comply with the mandates of § 2255 and Rule 4(b), as interpreted in this circuit by *Prewitt.* Justice, therefore, requires that we examine the impact of *Prewitt* herein, even if we must raise the issue *sua sponte.*

## C. Treatment of Paters' Original Defense Counsel.

As noted earlier, I am surprised at how Paters' original defense attorney has been treated during these § 2255 proceedings. The record is devoid of any evidence that the attorney was even aware that his competency had been challenged prior to the time the government conceded that he rendered ineffective counsel.[10] The government accepted

---

**10.** The record reflects that Paters filed his § 2255 petition on May 13, 1996. Then, on October 4 of that year, the court ordered the government to answer. The government filed its response on January 6, 1997, and mailed a copy of the response to Paters' attorney in the habeas proceeding *and* his original defense counsel. Be-

cause Paters' trial attorney was never called upon by the court or AUSA to respond to the allegations levied against him, it is unknown whether he in fact received the government's answer. As such, from the state of the record, it may even be that Paters' original defense attorney still has no knowledge that he has been

at face value the defendant's unsupported, self-serving Declaration that a plea agreement was offered and that the defense attorney acted improperly. Surprisingly, under questioning at oral argument, the AUSA conceded that there is nothing in the government's file to suggest that a plea agreement was ever offered to Paters, much less discussed with him or his attorney:

> COURT: You don't even know whether this plea agreement was offered, do you?
>
> AUSA: I don't know that, frankly....
>
> COURT: Did you look at the file, did you look at the file?
>
> AUSA: Yes, yes I did look at the file, Your Honor.
>
> COURT: You found nothing in there about a plea agreement for 60 months?
>
> AUSA: Right, there is nothing in writing that would establish that....

Yet, to the detriment of both the court and original defense attorney, the present AUSA who defended the § 2255 petition did not see fit to conduct any type of an investigation (e.g., not even so much as a letter or even a telephone call of inquiry to the former AUSA) to determine whether there was any semblance of truth to Paters' allegations:

> COURT: What did the government promise Mr. Paters. Would you deny that there was a promise of a 5–year recommendation if he would plead?
>
> AUSA: Well, Your Honor, this matter was handled by a different prosecutor who is no longer in the office and *whether that promise was made was not investigated specifically.*

Had a proper investigation been undertaken, the AUSA would have contacted Paters' original defense attorney as well as the former AUSA[11] to ascertain the veracity of the petitioner's allegations.

For all we know on the state of the record before us, the defense attorney might have

confirmed that the government had indeed tendered a plea offer to Paters, and that he had even advised Paters to reject that offer. Nevertheless, for the government to concede these bald, self-serving allegations without conducting even the semblance of an investigation, and failing to possess so much as a scintilla of support for them in the record, is not only improper but unfair to the court and Paters' original trial counsel. Every attorney representing the government would do well to remember that it is *justice*, not strategic victory, which is, and must be, his overriding concern. *See United States v. Jones*, 983 F.2d 1425, 1433 n. 13 (7th Cir. 1993) ("The public prosecutor cannot take as a guide for the conduct of his office the standards of an attorney appearing on behalf of an individual client .... The public prosecutor must recall that he occupies a dual role, being obligated, on the one hand, to furnish that adversary element essential to the informed decision of any controversy, but being possessed, on the other, of important governmental powers that are *pledged to the accomplishment of one objective only, that of impartial justice*") (quoting *Professional Responsibility: Report of the Joint Conference*, 44 A.B.A.J. 1159, 1218 (1958)) (emphasis added).

Charges of attorney incompetence are far from a trivial matter for legal counsel. "Professional reputation" is an attorney's lifeblood, and the stigma of a published finding of incompetence is obviously harmful to a legal career.[12] It behooves all attorneys to treat with respect and care the professional reputation of every officer of the court, and not to tarnish it without just cause. To ensure that no other attorneys, including court-appointed defense counsel, are subjected to this type of unfair treatment, as stated earlier, I would urge the promulgation of the rule that whenever a claim of ineffective assistance of counsel is presented to a trial

---

accused of rendering ineffective assistance of counsel, more than one year after the court dismissed Paters' petition on April 29, 1997.

**11.** The former AUSA is no longer a member of the Office of the United States Attorney.

**12.** Indeed, charges of incompetence can subject an attorney to disciplinary proceedings, *see Disciplinary Proceedings Against Woodard*, 183 Wis.2d 575, 515 N.W.2d 700 (1994) (incompetence and failure of preparation provided grounds for disciplinary proceeding); *Disciplinary Proceedings Against Dumke*, 171 Wis.2d 47, 489 N.W.2d 919 (1992) (same).

court, the accused attorney must be notified of the accusation and be given an opportunity, either by affidavit or appearance, to answer the charge, and that the letter of notification to the attorney be made part of the court file. Of course, in those cases where the judge decides that a habeas petition must be summarily dismissed for want of merit pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, the need for contacting the accused counsel is obviously eliminated. Thus, it is only when the petition, on its face, is sufficient to avoid summary dismissal under Rule 4(b) that counsel must be notified of the accusations levied against him or her. I would at this time also encourage the trial courts within our jurisdiction to require that attorneys who are accused of rendering ineffective assistance of counsel (in a § 2255 petition that satisfies Rule 4(b)) be given notification and, should they so desire, an opportunity to answer the charges against them.

It has been previously discussed in this case that such a rule would visit a great hardship upon the district courts. I disagree. As a trial judge, I instituted this procedure after accusations against defense counsel became an accepted strategy for criminal defendants and their attorneys, usually when they were without any other viable defense. My proposed rule might very well reduce the number of meritless petitions filed with the court, as petitioners become increasingly aware that their allegations of ineffective counsel will not go unchallenged. At least one state within this circuit's jurisdiction—the State of Wisconsin—has adopted such a rule, recognizing the inherent unfairness that results when a court analyzes claims of ineffective assistance without even letting the attorney know that he has been accused. *See State v. Machner,* 92 Wis.2d 797, 804, 285 N.W.2d 905, 908 (Wis.Ct.App. 1979) (*"[W]here a counsel's conduct at trial is questioned, it is the duty and responsibility of subsequent counsel to go beyond mere notification and to require counsel's presence at the hearing in which his conduct is challenged. We hold that it is a prerequisite*

*to a claim of ineffective representation on appeal to preserve the testimony of trial counsel. We cannot otherwise determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies.*") (emphasis added).

The adversary system in this country is premised upon *a search for the truth.* See *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975) (*"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."*) (emphasis added) (*quoted in United States v. Spears,* 671 F.2d 991, 992 (7th Cir.1982)). I am at a loss to understand how "truth"—the very heartbeat of our judicial system—can be achieved in the absence of a full and complete hearing, including an opportunity for all parties to present their case. This is especially true in situations like the action before us, where allegations of a lack of diligence and exercise of poor judgment are accepted and conceded without challenge, as well as premised on nothing but the self-serving, uninvestigated sworn statement of a *twice-convicted criminal defendant.*

### D. The Precedential Value of Toro.

Lastly, I must take issue with a point raised by my esteemed colleague in her concurrence. She disagrees with

the requirement in this Circuit's cases that someone like Paters, who alleges that he received ineffective assistance of counsel in deciding to reject a proposed plea agreement, must show through *objective evidence* even in advance of a hearing that but for counsel's faulty advice, he would have accepted the proposed plea. *See Toro v. Fairman,* 940 F.2d 1065 (7th Cir. 1991), cert. denied, 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992); *see also McCleese v. United States,* 75 F.3d 1174, 1179 (7th Cir.1996).

(Concurring Op. at 1049). My colleague goes on to state that *Toro,* the source of the rule, relies exclusively on *Strickland,* but she opines that this reliance is inapposite because

the decision from which the rule is derived—*Toro v. Fairman, supra*—merely imposes the requirement without any explanation, adding a *"cf."* cite to *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Toro,* 940 F.2d at 1068. But as *Toro's* *"cf."* cite itself indicates, *Strickland* does not impose an objective evidence requirement. *Strickland* merely articulates the standard a petitioner must meet in order to show prejudice .... 466 U.S. at 694, 104 S.Ct. 2052. (Concurring Op. at 1049).

I disagree with her contention that this circuit's objective evidence requirement is solely founded on *Toro,* or that it is somehow anomalous. Indeed, the requirement has been a part of our Seventh Circuit jurisprudence for more than forty years. As I stated earlier in my concurrence, a § 2255 petitioner cannot be content to offer *mere unsupported allegations,* but instead must point to objective evidence, or, as *Prewitt* termed it, *"actual proof of the allegations going beyond mere unsupported assertions."* *Prewitt,* 83 F.3d at 819 (emphasis added) (citations omitted). *See also Humphrey,* 896 F.2d at 1070; *United States ex rel. Edwards,* 676 F.2d at 256 n. 3; *Barry,* 528 F.2d at 1101; *Lowe,* 367 F.2d at 45–46 (citing *Mitchell,* 359 F.2d at 836–37); *Mathison,* 256 F.2d at 805; *Trumblay,* 256 F.2d at 617; *Knoch,* 245 F.2d at 230. My fellow concurring judge submits that her "objection to the *Toro* standard is ... not answered by ... the general habeas pleading standard," as set forth in *Prewitt,* because *Prewitt's* "actual evidence" test goes to the "quantum of proof supporting the petitioner's claims," whereas *Toro* "seems to require something more than actual proof." (Concurring Op. at 1049 n. 1). In my view, she mischaracterizes *Prewitt's* "actual proof" standard as relating solely to the "quantum of proof" necessary to support a petitioner's habeas claims. The fact of the matter is that the *Prewitt* pleading standard deals with both the quantity (i.e., "actual proof") *and* quality (i.e., "going beyond mere assertions") of proof offered. If, as my colleague suggests, *Prewitt* went only to the "quantum of proof" required in a habeas petition, our opinion in that case would not have added the qualification that such proof "go[ ] beyond

mere unsupported assertions." And, as I interpret *Prewitt,* an "unsupported assertion" is one that does not qualify as objective proof of the petitioner's claims. *See Prewitt,* 83 F.3d at 819 ("Prewitt has provided only allegations, rather than proof, of intentional delay. Suppositions about memoranda between investigators and prosecutors concerning the timing of the second indictment cannot carry the day...."). Contrary to what my colleague might say, *nothing* in my dissent-concurrence "makes clear," much less even remotely implies, that *Prewitt* and its related line of cases address only the amount of proof necessary to support a viable habeas petition.

I also disagree with my respected colleague's conclusion that this "objective evidence" rule is "unsound," "[g]iven the difficulty of producing so-called objective evidence in this context." Not only is there no case law to support this observation, but my concurring colleague must remember that Rule 4, like Fed. R. Civ. P. 12(b)(6), acts as a screening device to weed out meritless claims from the federal court system already overburdened by questionable appeals brought pursuant to an ever-increasing number of congressional enactments. *See Dellenbach,* 76 F.3d at 822. As we observed in *Olson v. United States,* 989 F.2d 229, 233 (7th Cir. 1993), " '[s]ome place, somewhere, somehow, we must put an end to this ... meritless litigation if we are to be able to attempt to render justice in a timely fashion to those with meritorious claims.' " (quoting *United States v. Kovic,* 830 F.2d 680, 692 (7th Cir.1987), *cert. denied,* 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988)). Rule 4 recognizes this potential for abuse in habeas proceedings and imposes a more stringent threshold pleading standard than its Federal Rule of Civil Procedure equivalent, as "the writ of habeas corpus has historically been regarded as an *extraordinary remedy,* a bulwark against convictions that violate 'fundamental fairness.' " *Brecht v. Abrahamson,* 507 U.S. 619, 633–34, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993) (internal quotations omitted and emphasis added);

see also *Dellenbach*, 76 F.3d at 822. *For this very reason, the Supreme Court has "applied different standards on habeas than would be applied on direct review...,"* Brecht, 507 U.S. at 634, 113 S.Ct. at 1720 (emphasis added); for example, *although the Constitution has been properly interpreted to guarantee the right to counsel on direct appeal, there is no "right to counsel when mounting collateral attacks...."* Pennsylvania v. Finley, 481 U.S. 551, 555–56, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (emphasis added) (citing *Johnson v. Avery*, 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969)). Because habeas relief is an extraordinary remedy, the standards that a § 2255 petitioner must meet are necessarily more stringent than those required of a criminal complainant on direct review, or a plaintiff in a civil suit. And insofar as the habeas remedy is by nature "secondary and limited," *Brecht,* 507 U.S. at 633, 113 S.Ct. at 1719, it is proper that a habeas petitioner not be able to support a claim merely on the basis of unsupported allegations, but instead needs to demonstrate that he or she has actual evidence of his or her claim. I cannot agree that *Toro, Prewitt,* and their numerous (eight cited herein) companion cases are without a sound basis in the law.

### CONCLUSION

I dissent from the majority opinion to the extent that I believe the scope of its remand is far too limited. While the majority directs that a hearing be conducted on the issue of whether there is a reasonable probability that Paters would have accepted the alleged plea agreement but for his trial counsel's advice, I am of the opinion that Paters' petition should be dismissed on remand to the district court under Rule 4(b). *Prewitt* requires a § 2255 petitioner to adduce actual, objective proof for *each* allegation at the time he submits his petition, and Paters has failed to meet this requirement. While I agree with the majority that, under *Toro,* Paters is obligated to produce objective evidence demonstrating that he would have accepted the government's alleged plea agreement, I can-

not agree that Paters' other allegations (i.e., that an offer of a plea agreement was even made in the first place) may be accepted without support. Nor do I agree with my colleague in her concurrence that *Toro* does not have a sound basis in the law. I also urge the adoption of a rule which mandates that counsel be given notice, and an opportunity to defend himself or herself, whenever he or she is accused of rendering ineffective assistance. Such a rule would serve to ensure compliance with this court's directive to all attorneys that they *"not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety." Final Report of the Committee on Civility of the Seventh Federal Judicial Circuit,* "Lawyer's Duties to Other Counsel," Std. No. 4 (The standards set forth in the Final Report of the Committee on Civility of the Seventh Federal Judicial Circuit were adopted by this court on December 14, 1992, and by the district courts within our jurisdiction the very next day, December 15) (emphasis added).