Rodney E. WOFFORD, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, et al., Respondents-Appellees.

No. 84–3253

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Dec. 17, 1984.

Howard W. Skinner, Jacksonville, Fla., for petitioner-appellant.

Barbara A. Butler, Asst. Atty. Gen., Jacksonville, Fla., for respondents-appellees.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

Rodney Earl Wofford appeals from denial by the United States District Court for the Middle District of Florida of his petition for a writ of habeas corpus. We affirm.

Wofford pled guilty to second degree murder in the Circuit Court of Nassau County, Florida for the multiple stabbing of his girlfriend. He now seeks relief pursuant to 28 U.S.C. § 2254 on the ground that he was denied effective assistance of counsel when he accepted the prosecution's offer of a thirty-year sentence. The district court referred the petition to the magistrate for a hearing and recommendation as provided in 28 U.S.C. § 636(b)(1).

At the hearing before the magistrate, Wofford testified that he agreed to the plea bargain because his court-appointed lawyer threatened him and also promised that he would receive psychological counseling in prison. He claimed that the lawyer told him that he had no defense and that if he went to trial he would certainly receive a life sentence. Wofford further testified he was never advised that he could be convicted of the lesser offense of manslaughter.

Wofford's trial counsel, Granville Burgess, substantially contradicted this testimony. He explained that he was fully prepared to go to trial, but after the jury was impanelled Wofford suddenly decided to accept the prosecution's latest offer of a thirty-year prison term.[1] Wofford told Burgess that he did not want to force his victim's young children, who witnessed the killing, to undergo the traumatic experience of testifying in court. Burgess insists that he then explained again the elements of the various applicable offenses and defenses, including manslaughter. He warned his client that the prosecutor and the judge had already indicated a severe sentence in the event Wofford were found guilty of second-degree murder. Burgess testified that he told Wofford that the State's chances of proving the greater offense were "somewhere in the neighborhood of 60/40." Transcript of Evidentiary Hearing, p. 69.

As the magistrate observed in his report and recommendation to the district court, "This case really boils down to a credibility choice between Petitioner and his trial defense counsel." R.Ex. p. 274. The magistrate credited the testimony of Burgess and recommended dismissal of the petition, finding that Wofford had voluntarily and knowingly decided to plead guilty and accept the thirty-year sentence proposed by the state. The district court made a *de novo* determination of the disputed parts of the magistrate's report and reviewed the

---

1. The trial judge had earlier announced that if Wofford pleaded guilty, he might receive only twenty years, depending on the result of a presentence investigation. The state insisted it would agree to nothing less than twenty-five years. The judge permitted the plea of guilty with the understanding that he would receive a twenty-year sentence but allowing him the right to withdraw the plea if a longer sentence was to be imposed. After the presentence investigation, the judge decided to sentence Wofford to forty years. Wofford then withdrew the plea of guilty. R.Ex. p. 277.

entire record. The district court agreed with the magistrate's findings, adopted the report and recommendation and dismissed the petition. *See, e.g., United States v. Lagrone,* 727 F.2d 1037 (11th Cir.1984); *Owens v. Wainwright,* 698 F.2d 1111 (11th Cir.1983); *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982).[2]

Wofford does not contend that the district court misconstrued the legal standards for measuring Burgess' effectiveness. Instead, he urges that the district court denied him due process by adopting the magistrate's credibility findings without first hearing the conflicting testimony.

In *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Supreme Court held that the Due Process Clause does not require a district judge who has referred a suppression motion to a magistrate for an evidentiary hearing to hold a second hearing before adopting the magistrate's evaluations of the witnesses' credibility. Speaking for four members of the Court, the Chief Justice framed the question as "whether the nature of the issues presented and the interests implicated in a motion to suppress evidence require that the district judge must actually hear the challenged testimony." 447 U.S. at 677, 100 S.Ct. at 2413, 65 L.Ed.2d at 434. Applying the three-factor balancing test of *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court reasoned:

> Of course, the resolution of a suppression motion can and often does determine the outcome of the case; this may be true of various pretrial motions. We have repeatedly pointed out, however, that the interests underlying a voluntariness hearing do not coincide with the criminal law objective of determining guilt or innocence.
>
> . . . . .
>
> While the district court judge alone acts as the ultimate decisionmaker, the statute grants the judge the broad discretion to accept, reject, or modify the magistrate's proposed findings. That broad discretion includes hearing the witnesses live to resolve conflicting credibility claims. Finally, we conclude that the statutory scheme includes sufficient procedures to alert the district court whether to exercise its discretion to conduct a hearing and view the witnesses itself.

447 U.S. at 677–78, 680–81, 100 S.Ct. at 2413, 2415, 65 L.Ed.2d at 434, 436 (footnotes omitted). In his concurrence Justice Blackmun noted, "In asking us to invalidate the magistrate program, [Raddatz] in effect requests removal of the second level of procedural protections afforded him and others like him. In my view, such a result would tend to undermine, rather than augment, accurate decision making." 447 U.S. at 685, 100 S.Ct. at 2417, 65 L.Ed.2d at 439 (footnote omitted). Both the Chief Justice and Justice Blackmun emphasized that *Raddatz* concerned only the adoption, not the rejection, of a magistrate's findings. *See, e.g., Louis v. Blackburn,* 630 F.2d 1105, 1109 (5th Cir.1980) ("[I]n a situation involving the constitutional rights of a criminal defendant, we hold that the district judge should not enter an order inconsistent with the credibility choices made by the magistrate without personally hearing the live testimony of the witnesses whose testimony is determinative.") (footnote omitted).

Applying the three factors enunciated in *Matthews,* and refined by *Raddatz,* we note that two of the conditions stressed in *Raddatz* are obviously present here. First, § 636(b)(1) confers broad discretion to the district judge to hear or dispense with further testimony, and to accept, reject or modify the magistrate's report. Second, by complying with Congress' directive that any portion of the report to which objection is made be determined *de novo* by the district court, the judge here refrained from exercising her broad discretion until she fully appreciated the credibility issues raised and their importance to the resolu-

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

tion of Wofford's claim. Thus, in view of *Raddatz'* application of *Matthews,* unless the interest underlying Wofford's right to effective assistance of counsel in deciding to plead guilty is substantially more important than was Raddatz' interest in having an involuntary confession suppressed, due process does not require that Wofford be allowed to present testimony the second time around in the district court.

 A plea of guilty is a waiver of several constitutional rights, including the fifth amendment privilege against compulsory self-incrimination and the sixth amendment rights to insist on a jury trial and to confront one's accusers. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969). Because such a waiver is valid only if made intelligently and voluntarily, an accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by his plea. *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425 (1969); *Mason v. Balcom,* 531 F.2d 717 (5th Cir.1976) (Charles Balkcom, Superintendent, Montgomery Correctional Institution). But counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. *Walker v. Caldwell,* 476 F.2d 213, 218 (5th Cir.1973). To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client. *Id.* at 217 (citing *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309, 319 (1948)). The interest underlying Wofford's claim is his interest in having, before he judges the desirability of the plea bargain, a general knowledge of the possible legal consequences of facing trial.

This interest is not more important, for purposes of *Raddatz,* than the fifth amendment privilege to suppress an involuntary confession. Raddatz' confession, allegedly elicited by FBI agents' false promises of immunity, was evidence highly damaging to his defense. In fact, by agreement of the parties Raddatz was tried on the basis of only the transcript from the suppression hearing and two stipulations. 447 U.S. at 672, 100 S.Ct. at 2410, 65 L.Ed.2d at 431. Nevertheless, the Supreme Court found the defendant's challenge to the admission of his confession not sufficiently critical as to require another hearing in the district court. In contrast to the plainly serious consequences of admitting Raddatz' statement, there is no reason here to believe that Wofford's acceptance of the prosecution's offer was a bad bargain. The trial judge had already stated that he could not sentence Wofford to less than forty years if the jury found Wofford guilty of second-degree murder. The largely undisputed evidence supporting this charge was strong indeed, and the only difficulty in presenting the prosecution's almost overwhelming case would have been eliciting the details of their mother's death from her two minor children.

The right to competent plea bargain advice is at best a privilege that confers no certain benefit, unlike the fifth amendment's bar to admission of involuntary confessions. An accused may make a wise decision even without counsel's assistance, or a bad one despite superior advice from his lawyer. The Supreme Court has commented that the unpleasant choice is one the defendant ultimately must make for himself, and that the decision is often inescapably grounded on uncertainties and a weighing of intangibles.

Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made

that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to attack if the defendant did not correctly assess every relevant factor entering into his decision.

*Brady v. United States*, 397 U.S. 742, 756–57, 90 S.Ct. 1463, 1463, 25 L.Ed.2d 747, 761 (1970). Thus, Wofford's interest in receiving effective assistance from counsel before deciding whether to plead guilty cannot be considered greater than was Raddatz' interest in asserting his privilege against the admission of a confession induced by government agents' false promises.

■ Accordingly, we hold that the district court did not violate due process by adopting the magistrate's credibility findings without hearing the live testimony bearing on Wofford's claim.

AFFIRMED.